## In Re: Petition of Wilhelm et al.

Argued December 15, 1931.

480

Before Trexler, P.
J., Keller, Linn, Gawthrop, Cunningham, Baldrige
and Stadtfeld, JJ.

*R. A. Freiler,* and with him *Harold L. Paul,* for appellant.

*William Wilhelm,* for appellee.

Opinion by Baldrige, J., March 5, 1932:

On December 24, 1930, a petition purported to be signed by six electors, alleging a number of violations of the Corrupt Practice Act, approved the 5th of March, 1906, P. L. 78 (25 PS. Sec. 1015), in the expense account of George Franklin Brumm, candidate for Congress, was presented to the court of quarter sessions of Schuylkill County, praying that it be certified "so that the court may audit the same." The court ordered the petition filed, and on January 5, 1931, directed the clerk "to certify the account referred to in the foregoing petition to the court for audit." There-

upon, the clerk certified the account to the court, and on January 26, 1931, February 9th was set to audit it. On March 20, 1931, after two postponements of the audit at the respondent's request, the respondent moved for the revocation of the orders made December 24, 1930, and January 5, 1931, and for dismissal of the petition, on the ground that it was not signed by five petitioners, and for various other reasons which need not be stated as they have not been pressed. On the same day four of the petitioners sought permission to withdraw their names from the petition. On May 4, 1931, all these motions were dismissed, and this appeal followed.

The appellant raises two questions: (1) Had the court jurisdiction to direct an audit of appellant's account? (2) Should the court have permitted the petitioners to withdraw from the proceedings?

(1) The appellant argues that the petition prayed for an accounting and not an audit. Section 9 of the act with which we are dealing relates to the administration features and provides that "within twenty days of the last day for the filing of any account required by this act, any five electors of the state ...... may present a petition to the court of quarter sessions of the county in which the office where such account has been filed is situated praying for an audit of such account. The court shall thereupon direct the officer or officers with whom such account has been filed to certify the same to the court for audit." Referring to this statute in Bechtel's Election Expenses, 39 Pa. Superior Ct. 292, 302, we said, "It was enacted at a special session of the legislature summoned by the governor, and was the legislative response to a vigorous demand by the people, that a remedy be found to stop the corruption fast becoming an incident of our popular elections which, if unchecked, would soon destroy the free and honest expression of the will of the

people. If possible, the construction of such a law should always be such that the legislative intent may be accomplished."

It must be borne in mind that we should give a liberal construction to remedial legislation, especially where the common interest becomes involved owing to the alleged illegal conduct of one seeking an election to a public office. True, the prayer did not adopt, as is advisable, the exact language of the act, but that was not absolutely necessary to warrant the court's order and its subsequent action. The act provides that after an application is made to the court for audit, the account is to be certified to it. The only purpose of seeking a certification of an account is to have it audited. The clear intent of the petition is apparent from the averments and the relief sought, and the construction of this statute, as contended for by the appellant, is too narrow and not within the spirit of its provisions.

(2) Four of the petitioners sought to withdraw from the proceeding, and, if their prayer had been granted, it would have ended as there did not remain a statutory number of electors for the court to order an audit. Thomas Polansky and Elizabeth Carrigan did not sign the petition but they expressly authorized their names to be attached thereto. Mary Polansky and Michael Carrigan acknowledged signing the petition but claimed they were ignorant of the contents thereof. No denial is made, however, of the truth of the averments.

When parties set in motion the machinery of the court, they may not thereafter, as a matter of course, stop it; it is under the control of the court. A court may, with entire propriety, allow a withdrawal if the request is made early, or where no action has been taken by the court, or where the public weal is not involved, as in Mercersburg Independent School Dis-

trict, 237 Pa. 368. But, here, the petitioners made no attempt for almost three months to withdraw as parties to this action. In the meantime the court had gotten into action and was attempting to proceed with the audit. The petitioners charged unlawful payments of money to certain individuals and that other moneys were used by the appellant for political purposes for which he has not accounted, as required by the Act of 1906, supra, amended by the Act, approved the 23d of April, 1927, P. L. 367. The public's interest was, therefore, involved and it is paramount to the wishes of the individual petitioners, and they ought not, without good cause, to be relieved of responsibility in a matter of this character. If the parties are permitted to withdraw without good and sufficient reasons, opportunities for fraud and collusion are readily afforded. Very persuasive inducements might be made to terminate a proceeding after illegal conduct has been disclosed, or causeless complaints may be filed, not intended to be prosecuted to the end, which would interfere with business of the courts and impose financial losses and inconvenience to others who may be concerned. Permitting withdrawals in such circumstances is not to be encouraged.

Under the facts as presented in this case, we find no reason to interfere with the discretion exercised by the learned court below.

Order is affirmed.