Lerten Appeal.

518

Argued January 11, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and GUNTHER, JJ. (ROSS, J., absent).

*Mahlon E. Lewis,* with him *Walter O. Howarth,* for appellant.

*Louis D. Cooper* and *David M. Harrison,* with them *Howard Zacharias, Peter Cooper, Cooper, Hunter & Lewis* and *Harrison & Louik,* for appellee.

OPINION BY GUNTHER, J., March 28, 1951:

The issue here presented is whether the court below erred in permitting the withdrawal of signatures to a petition seeking annexation of a tract of land in Scott Township to Mount Lebanon Township, both first class townships in Allegheny County. The an-

nexation petition was opposed by Scott Township and the School District of Scott Township, appellees. The court below permitted the withdrawal of 28 original signers and then dismissed the annexation petition on the ground that the statutory provisions[1] requiring signatures of 80% of the qualified electors and signatures of the owners of 80% of the assessed valuation of the real estate in the tract to be annexed had not been complied with. Erwin Lerten has taken this appeal on behalf of the annexation petitioners.

Erwin Lerten and 326 others, on August 2, 1949, filed their petition in the Court of Quarter Sessions of Allegheny County averring, *inter alia,* that they constituted (1) the owners of more than 80% of the assessed valuation of the property desired to be detached and annexed, and (2) that they constituted more than 80% of the qualified electors resident in the territory. The petitioners prayed that a tract of land consisting of approximately 324 acres located in Scott Township be annexed to Mount Lebanon Township pursuant to the provisions of the Act of June 19, 1939, P.L. 430, Section 1 et seq. 53 PS Section 19092-312.1 et seq. Attached to the petition was a plan or survey of the territory desired to be detached and annexed, together with a certified copy of the approval of the proposed annexation by Mount Lebanon Township Board of Commissioners. On August 2, 1949, the court entered an order that the annexation petition be served upon the secretary of the Township Commissioners of Scott Township. Scott Township filed an answer denying the material averments of the annexation petition and averred, by way of new matter, that the annexation petition was not filed in good faith, and that the underlying purpose of the annexation petition was to force

---

[1] Act of June 19, 1939, P. L. 430, Section 1 et. seq., 53 PS Section 19092-312.1 et seq.

the Paul tract into Mount Lebanon Township, thereby effectively prohibiting the Pauls from constructing certain apartment-type dwellings which were permissible under contemplated amendments to the zoning ordinance and regulations of Scott Township.[2]  The School District of Scott Township was, upon petition, permitted to intervene.

The matter came on for hearing on September 26, 1949.  The petitioners seeking annexation presented testimony establishing the averments of their petition. At the close of petitioner's case in chief, counsel for Scott Township offered to present a petition signed by 28 persons seeking to withdraw their names from the annexation petition averring that since they had signed ". . . they have discovered that the person or persons circulating said (annexation) Petition had

---

[2] On August 16, 1949, Erwin Lerten filed his petition seeking (1) to restrain the commissioners of Scott Township from publishing and otherwise making effective certain amendments to the zoning ordinance, and (2) an order restraining R. W. Paul and his wife from building or causing to be built on the Paul premises any type of mulitiple family dwelling or apartment houses. The injunction petition averred, *inter alia*, that the Scott Township commissioners had amended the zoning ordinance to permit the construction of multiple family dwelling units and apartment houses; that the Pauls were preparing to build apartment houses upon a 45 acre tract to the detriment of the petitioners seeking annexation to Mount Lebanon Township. It appears that the Paul tract of 45 acres which constitutes a portion of the tract presently sought to be annexed to Mount Lebanon Township had previously been situate in Mount Lebanon Township, but had been annexed to Scott Township on June 30, 1949. The reason for the annexation of the Paul tract to Scott Township was undoubtedly the fact that the zoning ordinance of Mount Lebanon forbade the erection and construction of multiple family dwelling units and apartment houses as contemplated by the Pauls. A restraining order was entered pending final disposition of this annexation proceeding.

made certain misrepresentations to them, and they have therefore reconsidered their action and are now desirous of withdrawing their names as petitioners. . . .". The court below refused to permit the 28 signers to recant merely upon averments of the withdrawal petition, but to enable the court to determine whether a proper and sufficient reason for withdrawal existed, permitted testimony of any person who wished to withdraw. The court below, after a full and extensive hearing, concluded that 38 signatories[3] had established valid and sufficient reasons for withdrawal and dismissed the petition. Exceptions were filed by Erwin Lerten on behalf of the annexation petitioners. This appeal is from dismissal by the court en banc of the material exceptions.

It is stated that if these 28 persons, plus one witness who had not signed the withdrawal petition but who appeared and testified and sought the withdrawal of his and his wife's signatures (or 30 in all) are permitted to withdraw, the annexation must fail for the reason that the annexation petition would not only lack the names of the owners of the required 80% of the assessed valuation of the real estate in the territory desired to be annexed, but would also lack the requisite 80% of the qualified electors residing within the tract.

---

[3] The court below inadvertently said that 38 signers sought to withdraw. The record clearly establishes that only 28 signed the petition to withdraw their names. They Are: Mary M. Schroeder; Rose Wagner; Priscilla Schmdit; Henry Schmidt; Helen Hilton; Roy Hilton; Wm. A. Haller; Vivetta Haller; John P. Loboda; Betty L. Loboda; Charles R. Ward; Geo. T. Hoffman; Jean L. Hoffman; John H. Terhorst; Mrs. Madalyne Terhorst; J. Giest; Mrs. Virginia S. Giest; Harry F. Schultz; June C. Schultz; William W. Morris; Thelma H. Morris; John Miller; Helen G. Miller; W. Phillips Palmer; George S. Clarke; Mrs. George S. Clarke; J. Manheimer; Mrs. Jack Manheimer.

Appellant contends that (1) jurisdiction of the court attached upon filing of the annexation petition and the court below lacked power thereafter to permit signatories to withdraw their names therefrom; (2) assuming power to permit withdrawal, it could be exercised only upon proof which would sustain a finding of fraud and deceit sufficient to avoid a contract; and (3) the evidence is insufficient to sustain a finding of fraud or deceit.

Prior to the decision of the Supreme Court in *Mercersburg Independent School District*, 237 Pa. 368, 85 A. 467, there are decisions lending weight to appellant's position that after the filing of the petition, recanting signers should not be permitted to withdraw. See *Borough of Quakertown*, 3 Grant 203 (1855); *Mann v. Cassidy*, 1 Brewster's Rep. 11, 43 (1857); *Tullytown Borough*, 1 Dist. 292 (1891); *Warren Borough's Annexation*, 168 Pa. 441, 32 A. 38 (1895); *Incorporation of Flemington Borough*, 168 Pa. 628, 32 A. 86 (1895); *Incorporation of the Borough of Old Forge*, 12 Pa. Superior Ct. 359 (1900); Cf. *Newton v. Emporium Borough*, 225 Pa. 17, 73 A. 984 (1909). In *Borough of Quakertown*, supra, the Court said: "The court were right in disregarding the recantation of some of the petitioners, for after the jurisdiction had attached, they could not oust it by any act of theirs." Again in *Incorporation of the Borough of Old Forge*, supra, the Court said (p. 362): "The court in determining whether the original petition had been signed by the required number of freeholders, counted as signers these parties who had signed but changed their minds when the proceeding was almost finished. Petitioners cannot thus play fast and loose with the court, joining with others to make up the number necessary to confer jurisdiction, and then threaten to deprive the court of jurisdiction, by withdrawing, if all col-

lateral questions are not decided as they suggest." The cases cited above, together with the cases cited in the footnote[4], indicate that the question here involved has been rather extensively considered by the appellate and lower courts. A considerable variation in result and a conflict in judicial reasoning as to the right to withdraw appears. In *Mercersburg Independent School District*, supra, the Court reviewed the cases cited, and although the Court recognized that those cases appeared to sustain appellant's contention that those seeking to withdraw could not by any act of their own oust jurisdiction of the court once jurisdiction had attached, it said (p. 372) : "Certainly, it was not intended to say that petitioners under no circumstances, even with leave of court, could withdraw. Such a rule would not only be a harsh one, but it would not be in keeping with the spirit and purpose of our system of jurisprudence. In such cases much must be left to the sound discretion of the court. The jurisdiction of a court in a sense attaches as soon as the petition is filed, or presented, but, prior to a hearing, and before anything has been done involving the rights of the parties, reasonable discretion should be exercised in favor of petitioners who in good faith and for proper reasons desire to withdraw." The Court also said, at page 371, that: "After a careful examination of all our Pennsylvania cases, above and below, the following general rules may be regarded as well established: . . . 2. A petitioner does not have the right per se to withdraw his name after jurisdiction has attached,

---

[4] *Application of Hunsberger*, 2 Montg. 132 (withdrawal refused) ; *Annexation of South Allentown*, 2 Leh. L. J. 387 (withdrawal refused) ; *Petition for the Incorporation of Mountville Borough*, 22 Lanc. L. Rev. 113 (withdrawal refused) ; *Wernersville Borough*, 5 Berks L. J. 364 (withdrawal refused) ; *Road in Rapho Township*, 22 Lanc. L. Rev. 29.

and in such cases never has the right to withdraw without leave of court. 3. If a petitioner has been induced to sign by misrepresentations, he may withdraw his name even after jurisdiction has attached, but this must be done with leave of court, or other body or tribunal having jurisdiction of the proceeding. 4. In those cases, in which jurisdiction has attached, the fact that several petitioners desire to withdraw their names, should be taken into consideration by the court; and, if, a sufficient number desire to withdraw, the court would not only be warranted in dismissing the petition, but in many instances should do so, on the ground, that under such circumstances the power of the court should not be asserted against the real wishes of signers whose names are necessary to give jurisdiction when they in good faith desire to withdraw from the proceeding. In other words, there should be no hard and fast rule making it impossible for petitioners to withdraw from a proceeding, or to discontinue a case, because jurisdiction in the first instance had attached."

It is true that the Supreme Court in the *Mercersburg* case, supra, disposed of that appeal on other grounds, yet we adopt the enlightening *dicta* there pronounced as setting forth a reasonable and equitable rule to dispose of the question here presented. The rationale of the *dicta* in the *Mercersburg* case pronounces what to us seems to be the more equitable rule and one more in harmony with our system of jurisprudence.

The fact that jurisdiction of the court had attached by the filing of the annexation petition was not of itself sufficient to deprive signatories the right to withdraw. They, of course, could not have withdrawn without leave of court. At this stage of the proceeding, it was the duty of the court below to inquire into the facts to ascertain whether the reasons submitted were sufficient to warrant their withdrawal; whether

the recanting signers were acting in good faith, and whether they were proceeding timely. There was lodged in the trial court the power to exercise a sound and judicial discretion to determine whether the evidence upon which withdrawal was sought was sufficient in quality and probative value to justify withdrawal. It is conceded by all parties that the petitioners were given full opportunity to establish proper reasons to warrant their withdrawal.

. The precise inquiry then becomes whether there has been a manifest abuse of discretion by the court below. This is a statutory proceeding; the statute is silent on the right of appeal and we, therefore, may review the case in the broadest sense of certiorari. *Braddock Township Appeal,* 148 Pa. Superior Ct. 52, 55, 24 A. 2d 705; *Grime v. Department of Public Instruction,* 324 Pa. 371, 375, 188 A. 337. A distinction exists between certiorari in its broadest sense and appeal. While we may review the evidence, the scope of review in the former is limited to whether an error of law has been committed. Unless there has been a serious abuse of discretion, matters resting solely in the judgment of the court below cannot be interfered with. *In re Elkland Leather Workers' Association,* 330 Pa. 78, 80, 198 A. 13, 15. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused": *Mielcuszny v. Rosol,* 317 Pa. 91, 93, 94, 176 A. 236. When the court, by the exercise of its discretion, has reached a conclusion "the party complaining of it on appeal has a heavy burden; it is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below;

it is necessary to go further and show an abuse of the discretionary power": *Garrett's Estate,* 335 Pa. 287, 292, 293, 6 A. 2d 858; *Irwin Borough Annexation Case (No. 1),* 165 Pa. Superior Ct. 119, 133, 67 A. 2d 757.

We now turn to a summary of the testimony of the signers seeking withdrawal. Of these 28 signers seeking withdrawal, 13 actually appeared and testified.[5] Nine witnesses of the 13 appeared and testified on behalf of themselves and their spouses.[6] The court below did not err in permitting one spouse to testify on behalf of the other absent spouse, especially where, as here, the joint property of both was involved. Cf. Act of May 23, 1887, P.L. 158, Section 5, cl. (c), as amended by the Act of May 10, 1927, P.L. 861, Section 1, 28 PS Section 317; *Henry, Trial Evidence,* (3rd Ed.) Section 451. At this point, therefore, 22 persons sought to withdraw by appearing and testifying or appearing through their respective spouses. W. H. Dengler did not sign the withdrawal petition, but he did appear, testified and asked that his and his wife's signatures be withdrawn. At this point, 24 names were sought to be stricken from the list. Twelve additional witnesses appeared and testified concerning a variety of alleged misrepresentations but the record is unmistakably clear that not one of these twelve witnesses requested the withdrawal of their signatures.

John YaSenka was called as a witness on behalf of the opponents to the annexation. He testified that he

---

[5] They are: Rose Wagner; Henry Schmidt; Helen Hilton; Charles R. Ward; Geo. T. Hoffman; Mrs. Madalyne Terhorst; J. Geist; Mrs. Virginia S. Geist; June C. Schultz; John Miller; W. Phillips Palmer; George S. Clarke; J. Manheimer.

[6] The spouses who did not appear are as follows: Mrs. W. Phillips Palmer; Mrs. George S. Clarke; Mrs. Helen G. Miller; Mrs. Jack Manheimer; Mr. Harry F. Schultz; Mrs. Priscilla Schmidt; Mr. Roy Hilton; Mr. John H. Terhorst; Mrs. Jean L. Hoffman.

was secretary of the Scott Township Civic League; that he, together with a Mr. Ostrowski, ". . . went out with a petition to get these people to withdraw their names and inform them of the true facts of the case". The substance of YaSenka's testimony, pertinent here, is that William A. Haller and his wife, and William W. Morris and his wife wanted Mr. YaSenka to appear in court and have their names withdrawn. Strenuous objection was made to this testimony, and properly so. It was manifestly unreasonable for the court below to strike the names of these four signers from the annexation petition on such obviously hearsay testimony. For the same reason, it was error for the court below to strike the signature of the son of John Miller. In this, there was a manifest abuse of discretion. In a matter which was so bitterly contested, and where the public weal was so clearly involved, signers desiring to withdraw were duty-bound to appear and to submit testimony upon which the court below could determine whether they were acting in good faith and for proper reasons sufficient to warrant their withdrawal.

It is unnecessary to recite the evidence in detail. Suffice it to say that misrepresentations were made concerning the population, financial stability of Scott Township and Scott Township School District, together with promises that signers would receive better police and fire protection and lower taxes. We have examined with extreme care the testimony of all parties seeking to withdraw and conclude that the court below in the exercise of a sound discretion properly permitted the withdrawal of the 24 signatures listed above on the basis of a finding of misrepresentations, a misapprehension of the facts; that they were misinformed and misguided. The findings of the court below in this respect will not be disturbed for the lack of a showing of a serious abuse of discretion.

Appellant's final contention that the proofs justifying withdrawal should amount to a finding of actual fraud or deceit sufficient in quality to avoid the consequences of a contract is without merit. Appellant's suggested burden of proof is too harsh. The rule which permits a withdrawal upon timely application when made in good faith and for proper reasons is much more likely to get at the real and mature judgment of the voters, and moreover is calculated to discourage a hasty presentation of a petition without a full disclosure of the real merits of the question. Circulators of a petition can usually avoid sufficient withdrawals to defeat the petition by taking care that the matter is fully understood by those to whom it is presented for signature. What was said in the *Mercersburg* case, supra, is more consonant with the theory of the cases that ". . . reasonable discretion should be exercised in favor of petitioners who in good faith and for proper reasons desire to withdraw. . . . In other words, there should be no hard and fast rule making it impossible for petitioners to withdraw from a proceeding, or discontinue a case". Tacit approval that the burden of proof imposed upon recanting signers is that as pronounced in the *Mercersburg* case, supra, is found *In Re: Petition of Wilhelm,* 104 Pa. Superior Ct. 479, 482, 483, 159 A. 49. Several lower court decisions indicate that the burden of proof contended for by appellant is too onerous. Cf. *East Newport Borough,* 35 C. C. 617; *In Re: Independent School District,* 2 Chester 132; *Election Expense Accounts,* 22 Dist. 952. The power of the court should not be asserted against the real wishes of signers whose names are necessary to give jurisdiction when they in good faith desire to withdraw from the proceeding. That this is the extent of the burden in other jurisdictions is deducible from the cases. Cf. *Hawkins v. Carroll,*

190 S.C. 11; 1 S.E. (2) 898; *Sutherland v. McKinney;* 146 Ind. 611, 45 N.E. 1048; *State ex rel Morgan v. Nemaha,* 10 Neb. 32, 4 N.W. 373; *Hill v. McClintock,* 175 Ark. 1059, 1 S.W. (2) 564.

Order reversed. The record is remitted with instructions that the court below, on the basis of the views expressed in this opinion, recalculate the percentage of assessed valuation of real estate owned by the annexation petitioners and the percentage of qualified electors seeking annexation to determine if the requirements of Section 2 of the Act of June 19, 1939, P.L. 430, have been complied with and thereafter to enter an order accordingly. Each party to pay his or its costs of this appeal.

---

DISSENTING OPINION BY RHODES, P. J.:

I feel obliged to file a dissent to the majority opinion, as I would affirm the order of the court below.

The first question raised on the appeal in this proceeding is whether the court below had authority to permit petitioners in the proceeding to withdraw after the petition for annexation had been filed. Appellant admits that, if the withdrawals permitted by the court below are proper, as a matter of law, the petition must fail for lack of "the requisite 80% of the qualified electors and 80% of the assessed valuation." Appellee joins in this admission. It is argued that the court below had no discretion to permit withdrawals for the reasons given at this stage of the proceeding. Appellant admits that if the withdrawals permitted by the court below are sustained, even though this number be taken as twenty-nine and not thirty-eight, the petition must fail.

Twenty-eight persons had signed the petition to withdraw which set forth that they had signed the an-

nexation petition due to misrepresentations made to them. At the hearings on the annexation petition testimony was introduced in support of and supplementary to the averments in the petition to withdraw. Among the witnesses were thirteen who had signed the withdrawal petition. A number testified that they spoke for their respective spouses who had likewise signed the withdrawal petition. Some appeared for themselves and others who had signed the petition to withdraw. In another instance a party who had not signed the withdrawal petition appeared and testified that he and his wife desired their signatures to be withdrawn from the annexation petition. Many additional witnesses appeared and testified although they may not specifically have requested that their names should be withdrawn from the annexation petition. The oral testimony was confirmatory of the petition to withdraw which contained twenty-eight signatures. At least twenty-nine persons properly sought to withdraw, and the court permitted at least that many to withdraw.

The trial judge who heard the witnesses concluded that the withdrawing petitioners signed the annexation petition under a misapprehension of fact as to the reasons for that petition. The trial judge also dismissed the annexation petition on the ground that the amended petition and plan had not been approved by the annexing Township of Mount Lebanon. Exceptions were filed to the dismissal of the petition for annexation; on argument the court in banc affirmed the dismissal of the annexation petition, holding that it was within the discretion of the trial judge to permit the petitioners to withdraw their names.

Certain undisputed facts fully supported by the evidence are set forth by the opinion of the court in banc as follows:

"(a) That a group of Mt. Lebanon property owners, calling themselves Mt. Lebanon Property Owners

Association, instituted this proceeding for the sole purpose of preventing the erection of apartment buildings on a tract of land in Scott Township;

"(b) That the committee formed to solicit signatures to the petition did not, in most instances, show a map or boundary line of the territory to be annexed to the residents or owners of property in the area;

"(c) That many of the persons whose signatures were obtained did not know that the map or plan, bisected Scott Township into two separate tracts;

"(d) That the Mt. Lebanon Property Owners Association had underwritten the entire cost of this proceeding, and that signers of the petition did not pay any money for fees, costs or other expenses of this proceeding;

"(e) That the Chairman of the Committee for annexation filed an amended petition and plan, and in the affidavit stated that he was authorized to do so by the signers to the petition; no such authority was requested or given according to the testimony of some of the signers to the petition who testified under subpoena;

"(f) That the plan was drawn without any rational boundary lines and did not follow streets, roads, streams, or other natural boundaries;

"(g) That the plan submitted consisted largely of property on the higher elevations which would throw a tremendous burden upon Scott Township by forcing Scott Township to take care of all the drainage from the district without getting any revenue therefrom;

"(h) That misrepresentations were made concerning the population, financial stability and adequate schooling for Scott Township;

"(i) The Committee made no attempt to inform some of the signers that the voters of Scott Township

had authorized a bond issue of $225,000 to build a new school in the area;

"(j) The amended plan which was offered in evidence was not presented to the Commissioners of Mt. Lebanon Township."

Appellant's position is that, as a matter of law, the court below had no authority or discretionary power to permit any of the petitioners to withdraw after the court had assumed jurisdiction of the annexation petition, especially in the absence of any finding that either fraud or misrepresentation had been practised upon those petitioners who sought to withdraw. Appellant contends that there is no evidence which would justify the court's permission for withdrawal. The right of petitioners to withdraw depends upon the circumstances; no hard and fast rule can be laid down, and in such cases much must be left to the sound discretion of the court. *Mercersburg Independent School District*, 237 Pa. 368, 371-373, 85 A. 467.

The evidence in this proceeding supports the court's finding that petitioners seeking withdrawal signed the annexation petition in some instances under specific misrepresentations; and while, as the court below states, the evidence may not, in all instances, have been sufficient to establish actual fraud or active misrepresentation, it does appear from the evidence that withdrawing petitioners acted at least under a misapprehension of the facts, and in many instances without a full and complete disclosure of all the relevant facts which would ordinarily motivate their action in signing such an annexation petition.

It devolves upon the court of quarter sessions to see that such an annexation proceeding is conducted properly, and that the requirements of the statute are fulfilled. If some petitioners are shown to have been induced to sign without full disclosure of material facts

or under a misapprehension as to important facts, these matters go to the very foundation and legality of the petition, and may establish that the procedural requirements of the Act (June 19, 1939, P. L. 430) have not been met. In acting within its discretionary powers and permitting withdrawal of petitioners for cause shown, the court is in no way exceeding its statutory authority. In the present case the court acted within its discretionary power in permitting petitioners to withdraw, and its decision cannot be reversed on the ground of abuse of that discretion.

The annexation petition was also properly dismissed by the court below for lack of another statutory requirement—approval of the amended plan by the annexing Township of Mount Lebanon. Act of June 19, 1939, P.L. 430, § 3, 53 PS § 19092-312.3. Cf. *Whitehall Borough Incorporation Case,* 161 Pa. Superior Ct. 397, 403, 55 A. 2d 70. When counsel for petitioners offered in evidence the petition and amended petition, counsel for Scott Township School Board, intervening appellee, objected on the ground that the amended plan had never been approved by the Commissioners of Mount Lebanon Township. It is admitted that such approval by Mount Lebanon Township was never obtained. The requirements of the statute are mandatory. *In re Annexation of a Portion of Abington Twp. to Boro. of Jenkintown,* 101 Pa. Superior Ct. 227, 230. Petitioners for annexation had the burden of showing compliance with the requirements of the statute. *Braddock Township Appeal,* 148 Pa. Superior Ct. 52, 59, 24 A. 2d 705.

The order of the court below dismissing appellant's exceptions and affirming the dismissal of the annexation petition should be affirmed.

Judge RENO joins in this dissent.